IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br> v. <br><br> **FREDRIC RUSSELL DEAN**, <br><br> Defendant. | Case No. 3:18-cr-00119-SI <br><br> **OPINION AND ORDER** |

**Michael H. Simon, District Judge.**

On April 22, 2020, Defendant Fredric Russell Dean ("Mr. Dean") submitted a request for reduction in sentence to the warden at the Federal Correctional Institution at Sheridan, Oregon ("FCI Sheridan"). After waiting more than 30 days, on June 3, 2020, Mr. Dean filed with the Court a Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). ECF 55. The Government opposes Mr. Dean's motion on the merits. For the reasons that follow, the Court DENIES Mr. Dean's Motion to Reduce Sentence.

### LEGAL FRAMEWORK FOR COMPASSIONATE RELEASE

**A.  Modifying a Term of Imprisonment for Compassionate Release**

A district court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see Dillon v. United States*, 560 U.S. 817, 824-25 (2010).

Congress, however, has expressly authorized a district court to modify a defendant's sentence in three limited circumstances: (1) when granting a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A); (2) when expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure; or (3) when a defendant has been sentenced based on a sentencing range that has subsequently been lowered by the Sentencing Commission. 18 U.S.C. § 3582(c)(1). The motion before the Court seeks compassionate release.

Before 2018, § 3582(c)(1)(A) required that a motion for compassionate release could be brought only by the Bureau of Prisons ("BOP"). The First Step Act ("FSA"), Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018), amended § 3582 to authorize courts to grant a motion for compassionate release filed by a defendant. A defendant, however, may only bring a motion for compassionate release *after*: (1) petitioning the BOP to make such a motion on the defendant's behalf; *and* (2) either (a) the defendant has exhausted all administrative appeals after the BOP denied the defendant's petition or (b) thirty days has elapsed after the warden of the defendant's facility received the defendant's petition, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A).[1]

Compassionate release under § 3582(c)(1)(A) authorizes a court to modify a defendant's term of imprisonment if the court finds that two conditions have been satisfied. The first is that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). The second is that "such a reduction is consistent with applicable policy statements issued by the

---

[1] On June 2, 2020, the United States Court of Appeals for the Sixth Circuit held that a defendant's failure to satisfy this administrative exhaustion requirement does not deprive a court of subject-matter jurisdiction; instead, this is a mandatory claim-processing rule that binds the courts when properly asserted by the Government and not forfeited. *United States v. Alam*, --- F.3d ---, 2020 WL 2845694 (6th Cir. June 2, 2020). The Ninth Circuit has not yet addressed this issue.

Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The court also must *consider* the factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable. *Id*.

## B. Extraordinary and Compelling Reasons

The Sentencing Commission policy statement for reducing a term of imprisonment under § 3582(c)(1)(A) is found in the United States Sentencing Guidelines Manual ("USSG") at § 1B1.13. That policy statement explains the phrase "extraordinary and compelling reasons." USSG § 1B1.13(1)(A) and cmt. 1. According to the policy statement, extraordinary and compelling reasons are: (1) the medical condition of the defendant (defined as whether the defendant is suffering from a terminal illness; or is suffering from a serious physical or medical condition, serious functional or cognitive impairment, or deteriorating physical or mental health because of the aging process, "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover"); (2) the age of the defendant (defined as whether the defendant is at least 65 years old, is experiencing a serious deterioration in physical or mental health because of the aging process, and has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less); (3) family circumstances (defined as the death or incapacitation of the caregiver of the defendant's minor child or minor children or the incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner); and (4) any other extraordinary and compelling reason determined by the Director of the BOP. USSG § 1B1.13 cmt. 1.

We are currently in a global health crisis caused by the 2019 novel Coronavirus ("COVID-19"), which already has taken the lives of more than 110,000 people just in the United States during the past several months. When a defendant has a chronic medical condition that may substantially elevate the defendant's risk of becoming seriously ill or dying from

COVID-19, that condition may satisfy the standard of extraordinary and compelling reasons. Under these circumstances, a chronic medical condition (*i.e.*, one from which a defendant is not expected to recover) reasonably may be found to be both serious and capable of substantially diminishing the ability of the defendant to provide self-care within the environment of a correctional facility, even if that condition would not have constituted an extraordinary and compelling reason absent the heightened risk of COVID-19. *See generally* USSG § 1B1.13 and cmt. 1(A)(ii)(I).

Alternatively, USSG § 1B1.13, as currently written, does not constrain the Court's ability to find extraordinary and compelling reasons here. Because the Sentencing Commission's policy statement was not amended after enactment of the First Step Act, "a growing number of district courts have concluded the Commission lacks an applicable policy statement regarding when a judge can grant compassionate release" . . . "because the Commission never harmonized its policy statement with the FSA." *United States v. Mondaca*, 2020 WL 1029024, at *3 (S.D. Cal. Mar. 3, 2020) (citing *Brown v. United States*, 411 F. Supp. 3d 447, 499 (canvassing district court decisions)) (quotation marked omitted); *see also United States v. Redd*, 2020 WL 1248493, at *6. (E.D. Va. Mar. 16, 2020) ("[T]here does not currently exist, for the purposes of satisfying the ["FSA's] 'consistency' requirement, an 'applicable policy statement.'"); *United States v. Barber*, 2020 WL 2404679, at *3 (D. Or. May 12, 2020) ("The Court is persuaded by the reasoning of numerous other district courts and holds that it is not constrained by the BOP Director's determination of what constitutes extraordinary and compelling reasons for a sentence reduction.") (citations and quotation marks omitted).

As explained by one court, "a majority of federal district courts have found that the most natural reading of the amended § 3582(c) and [28 U.S.C.] § 994(t) is that the district court

assumes the same discretion as the BOP director when it considers a compassionate release motion properly before it." *United States v. Perez*, 2020 WL 1180719, at *2 (D. Kan. Mar. 11, 2020). Indeed, the Government previously conceded this point in *United States v. Young*, agreeing that "the dependence on the BOP to determine the existence of an extraordinary and compelling reason, like the requirement for a motion by the BOP Director, is a relic of the prior procedure that is inconsistent with the amendments implemented by the First Step Act." 2020 WL 1047815, at *6 (M.D. Tenn. Mar. 4, 2020). The court in *Young* followed many other district courts in recognizing that § 1B1.13's defined categories are not exclusive: "In short, federal judges are no longer constrained by the BOP Director's determination of what constitutes extraordinary and compelling reasons for a sentence reduction." *Id*. The Court agrees with this alternative analysis as well.

### C. Safety of Other Persons and the Community

The policy statement further provides that, in addition to finding extraordinary and compelling reasons, a court also must find that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." USSG § 1B1.13(2). The factors to be considered in deciding whether a defendant is a danger to the safety of any other person or to the community are: (1) the nature and circumstances of the offense (including whether the offense is a crime of violence, a violation of 18 U.S.C. § 1591, a federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device); (2) the weight of the evidence; (3) the history and characteristics of the defendant (including, among other things, the defendant's character, physical and mental condition, and family ties and whether at the time of the offense or arrest the defendant was on probation, parole, or other release); and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g).

### D.  Sentencing Factors Under § 3553(a)

Finally, as provided in both § 3582(c)(1)(A) and the policy statement, a court must consider the factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable. These factors include the nature and circumstances of the offense; the history and characteristics of the defendant; and the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public, and provide the defendant with needed training, medical care, or other treatment in the most effective manner. 18 U.S.C. § 3553(a). The policy statement also recognizes that the sentencing court "is in a unique position to determine whether the circumstances warrant a reduction . . ., after considering the factors set forth in 18 U.S.C. § 3553(a) and the criteria set forth in this policy statement[.]" USSG § 1B1.13 cmt. 4.

## DISCUSSION

### A.  Mr. Dean's Criminal History

Mr. Dean was born in 1979. He currently is 41 years old. In 1997, at the age of 18, he was convicted in Oregon state court of Burglary I, a felony. He received a 60-day work release sentence and three years of probation. In 1998, while on probation, Mr. Dean was convicted in federal court of felon in possession of a firearm. He received a sentence of eight months in jail plus three years of supervised release. In 2004, at age 25, Mr. Dean was convicted in Oregon state court of attempting to elude police, a felony, along with a misdemeanor driving offense. In 2005, he was convicted in Washington state court of identity theft, a felony. In 2006, he was convicted in Oregon state court of felon in possession of a firearm. He was sentenced to two years in prison and two years of post-prison supervision. In 2009, he was convicted in federal court of felon in possession of a firearm. He was sentenced to a 33-month prison term and three years of supervised release.

In 2014, Mr. Dean was convicted in federal court of felon in possession of a firearm. United States District Judge Ancer L. Haggerty sentenced Mr. Dean to a 60-month prison term plus three years of supervised release. In March 2016, after Judge Haggerty's retirement from the bench, the undersigned district judge granted Mr. Dean's motion to correct sentence based on the Supreme Court's decision in *Johnson v. United States*, --- U.S. ---, 135 S. Ct. 2551 (2015). In May 2016, the undersigned resentenced Mr. Dean to a term of 27 months imprisonment followed by three years of supervised release. Mr. Dean was released from prison shortly thereafter and began his period of supervised release.

In March 2018, while Mr. Dean was on federal supervised release from his 2014 conviction, a federal grand jury indicted Mr. Dean on three new charges based on conduct in early 2018. First, Mr. Dean was charged with one count of possession of an unregistered firearm, specifically a short-barreled rifle. Second, Mr. Dean was charged with one count of possession of unregistered firearms, specifically three unmarked firearm silencers. Third, Mr. Dean was charged with one count of felon in possession of a firearm. In March 2019, Mr. Dean pleaded guilty to the charge of possession of an unregistered firearm, the short-barreled rifle. The was Mr. Dean's *fifth* conviction of unlawfully possessing firearms.

The Court held a sentencing hearing on August 26, 2019. At the same time, Mr. Dean admitted violating the conditions of his 2014 supervised released by unlawfully possessing a short-barreled rifle, by unlawfully possessing three unmarked silencers, and felon in possession of a firearm (four firearms). The Court sentenced Mr. Dean to a total term of imprisonment of 75 months, consisting of a 51-month sentence on the 2019 conviction, followed by a consecutive 24-month sentence on his supervised release violation from his 2014 conviction.

PAGE 7 – OPINION AND ORDER

Mr. Dean currently is serving his sentence at FCI Sheridan. He has been in federal custody for approximately 27 months. According to BOP records, Mr. Dean's scheduled release date is August 21, 2023. After considering good behavior credit, Mr. Dean has served approximately 40 percent of his original 75-month sentence. In 26 months, Mr. Dean may be eligible for placement at a half-way house under the Second Chance Act.

**B.  Mr. Dean's Medical Condition**

Mr. Dean is asking the Court to release him now to serve up to 26 months in home confinement, including GPS location monitoring. In November 2016, Mr. Dean was diagnosed with testicular cancer, specifically left testicular seminoma, stage IIb. In December 2016, Mr. Dean underwent surgical removal of his left testicle, followed by combination chemotherapy with three different chemotherapy drugs: bleomycin, etoposide, and platinum (cisplatin), also known as "BEP." Because BEP is known to cause varying degrees of "cardiopulmonary complications" and "lung disease," Mr. Dean's oncologist ordered a pulmonary function test close in time to his diagnosis. That baseline testing showed that, before chemotherapy, Mr. Dean already had "early lung damage, specifically, 'mild, early obstruction.'" After these tests, Mr. Dean received rounds of BEP through March of 2017, "with complications of severe urinary tract infection, nausea, fatigue, migraine headache, paranoia and hallucinations, and both low back and generalized body pain." In the aftermath of chemotherapy, Mr. Dean began to experience pain and "harshness" with breathing.

Urinary tract infections, while rare for men, have been a recurrent, post-cancer complication for Mr. Dean in jail and prison. Between November 2015 and February 2016, he was treated for persistent urinary symptoms and infection at FCI Sheridan. On February 27, 2017, Providence Oncology treated Mr. Dean for a "UTI/cystitis." On August 19, 2018, the

Multnomah County jail diagnosed Mr. Dean with a urinary tract infection. On January 12, 2019, FCI Sheridan diagnosed him with a urinary tract infection.

Mr. Dean's metastatic, abdominal tumor, originally detected in imaging studies in November 2016, could not be surgically removed. It is being monitored for recurrence, and it causes ongoing symptoms of chronic pain, severe gastric reflux, lower intestinal distress, and interference with sleep. In general, 80 percent of men with cancers like Mr. Dean's are considered low risk for recurrence. Mr. Dean, however, is at higher risk for a poorer prognosis because of the cancer's infiltration into lymph nodes in his abdomen.

There is no dispute that we are currently in a global health crisis and pandemic. The CDC warns that "[p]eople 65 years and older" are "at high-risk for severe illness from COVID-19." *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (lasted visited June 10, 2020). In addition, the CDC explains that people of all ages with certain underlying medical conditions, particularly if not well controlled, also are at high-risk for severe illness from COVID-19. According to the CDC, these underlying medical conditions are:

- People with chronic lung disease or moderate to severe asthma[.]
- People who have serious heart conditions[.]
- People who are immunocompromised[.]

  \* \* \*

- People with severe obesity (body mass index [BMI] of 40 or higher)[.]
- People with diabetes[.]
- People with chronic kidney disease undergoing dialysis[.]
- People with liver disease[.]

*Id.*

In support of his motion, Mr. Dean submitted an opinion letter from Dr. Thomas McNalley. Dr. McNalley states that Mr. Dean is at higher risk for serious complications from

COVID-19, "rang[ing] from serious long-term cardiopulmonary compromise with prolonged hospitalization, including respiratory failure, shock, acute respiratory distress syndrome (ARDS), and cardiac arrythmia to death." ECF 57-4 at 2. Further, according to Dr. McNalley, Mr. Dean "is at increased risk for severe cardiac or pulmonary injury with attendant disability or death should he contract the [COVID-19] virus." Id.

### C. FCI Sheridan

As previously noted, Mr. Dean is incarcerated at FCI Sheridan. As of today, the BOP has not reported *any* positive cases of COVID-19, either among inmates or staff, at FCI Sheridan. *See* https://www.bop.gov/coronavirus/ (last visited June 10, 2020). The BOP's information, however, is only of limited value. The BOP does not disclose whether or to what extent a facility is testing symptomatic or asymptomatic inmates, both or neither. In *United States v. Pabon*, 2020 WL 2112265, at *5 (E.D. Pa. May 4, 2020), the court cited Johns Hopkins Bloomberg School of Public Health Professor Leonard Rubenstein to explain the link between testing and limiting the spread of COVID-19: "Unless you do universal testing in all environments, the risk of spread is enormous. If you are waiting for symptoms to emerge before you do the testing, you are getting a false picture of what is going on . . . It's too late." *Id*. (citing Kevin Johnson, Mass Virus Testing in State Prisons Reveals Hidden Asymptomatic Infections; Feds Join Effort, USA TODAY (Apr. 25, 2020, updated Apr. 27, 2020), https://www.usatoday.com/story/news/politics/2020/04/25/coronavirus-testing-prisons-revealshidden-asymptomatic-infections/3003307001/) (last visited June 2, 2020); *see also Arias v. Decker*, 2020 WL 2306565, at *8 (S.D.N.Y. May 8, 2020) ("[W]hen it comes to vulnerable detainees . . ., monitoring them for signs of infection is too little, too late.").

### D. Government's Response

The Government argues that there are no reported cases of COVID-19 at FCI Sheridan. The Government also discusses Mr. Dean's past history with methamphetamine and substance abuse. The Government also mentions the fact that Mr. Dean may benefit from participating in the BOP's Residential Drug Abuse Program ("RDAP") but will be unable to do so if he is released now. The Government also questions whether Mr. Dean's current health condition places him at any particularly greater risk from COVID-19 than any other inmate. But, most significantly, the Government argues that Mr. Dean has failed to show that he is no longer a danger to the community. The Court focuses on that final factor.

### E. Danger to the Community

Also as previously noted, Mr. Dean is 41 years old with a long and extensive criminal history of unlawfully possessing firearms, including most recently, a short-barreled rifle and silencers. Moreover, this is Mr. Dean's *fifth* conviction for the crime of felon in possession of a firearm. Further, he committed this offense while on supervised release from a similar conviction. Indeed, he has committed many of his prior felony offenses while on probation, supervised release, or post-prison supervision. Thus, the Court has no confidence that supervision will be successful now.

Compassionate release is "rare" and "extraordinary," and courts routinely deny such claims. *United States v. Mangarella*, 2020 WL 1291835, at *2–3 (W.D.N.C. Mar. 16, 2020) ("[A] compassionate release . . . is an extraordinary and rare event.") (citation omitted). A defendant bears the burden to show special circumstances meeting the high bar set by Congress and the Sentencing Commission for compassionate release. *See United States v. Greenhut*, 2020 WL 509385, at *1 (C.D. Cal. Jan. 31, 2020) (holding that a defendant bears the burden of establishing entitlement to sentencing reduction and citing *United States v. Sprague*, 135

F.3d 1301, 1306-07 (9th Cir. 1998)). As other district courts have noted: "To be faithful to the statutory language requiring 'extraordinary and compelling reasons,' it is not enough that Defendant suffers from . . . chronic conditions that [he] is not expected to recover from. Chronic conditions that can be managed in prison are not a sufficient basis for compassionate release." *United States v. Ayon-Nunez*, 2020 WL 704785, at *2–3 (E.D. Cal. Feb. 12, 2020) (rejecting a claim for compassionate release from a defendant suffering from severe back injuries and epilepsy) (brackets in original) (quoting *United States v. Weidenhamer*, 2019 WL 6050264, at *5 (D. Ariz. Nov. 8, 2019)). The Court also must consider the sentencing factors under § 3553(a), to the extent they are applicable. *See* § 3582(c)(1)(A) and USSG § 1B1.13.

The Court has considered all the relevant factors for compassionate release. Based on Mr. Dean's extensive criminal record, including committing felony offenses while on probation or under court supervision, the Court concludes that Mr. Dean has not shown special circumstances that meet the high bar set by Congress and the Sentencing Commission for compassionate release.

## CONCLUSION

The Court DENIES Defendant's Motion to Reduce Sentence. ECF 55.

**IT IS SO ORDERED.**

DATED this 10th day of June, 2020.

*/s/ Michael H. Simon*
Michael H. Simon
United States District Judge